09-2594-cv
Gerena v. Korb

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued February 9, 2010)                    (Decided  July 29, 2010)

Docket No. 09-2594-cv

-------------------------------------------------------------------------x

ALEXANDRA GERENA, CONSTANCE GERENA,

Plaintiffs-Appellants,

- against -

GREGORY KORB, YALE UNIVERSITY,

Defendants-Appellees.

-------------------------------------------------------------------------x


B e f o r e:      POOLER and LIVINGSTON, Circuit Judges,
                        and TRAGER, District Judge.[*]



        Appeal from a judgment of the United States District Court for the District of

Connecticut (Eginton, J.) entered on May 15, 2009, dismissing for failure to timely effect service

and untimeliness of the claims under Connecticut law.

        The judgment of the district court is affirmed in part, reversed in part, and remanded.

---

[*] The Honorable David G. Trager of the United States District Court for the Eastern District of
New York, sitting by designation.

DAVID L. RABIN, Esq.,
Mount Kisco, NY,
for Plaintiffs-Appellants

ROSEMARIE PAINE, Esq.,
New Haven, Connecticut,
for Defendant-Appellee Gregory Korb

PATRICK M NOONAN, Esq., COLLEEN
NOONAN DAVIS, Esq.,
Guilford, CT,
for Defendant-Appellee Yale University

Trager, J.

Alexandra Gerena ("Alexandra") and her mother Constance Gerena (collectively, "the Gerenas" or "appellants") appeal from the judgment of the United States District Court for the District of Connecticut (Eginton, J.) dismissing their case under Federal Rule of Civil Procedure 4(m) for failure to timely serve defendants Yale University ("Yale") and Gregory Korb ("Korb"), and additionally finding the Gerenas' claims untimely under Connecticut law.  For the reasons explained below, we affirm the district court's dismissal of the suit against Yale for failure to timely serve.  However, we disagree with the district court's conclusion that the Gerenas' time to serve Korb was never extended.  With respect to the district court's second ground for dismissal of the claims against Korb – untimeliness under Connecticut's statute of limitations – there is a preliminary choice of law issue that was not explored in the opinion below.  We therefore remand for a determination of whether personal jurisdiction over Korb existed in New York, such that New York choice of law should have governed the Gerenas' claims against Korb.

**Background**

**(1)**

**Underlying Events and Commencement of the Action**

The Gerenas commenced this action in New York Supreme Court, Bronx County, on April 24, 2007.  They are seeking damages arising out of an incident that occurred in August 2005, at the beginning of Alexandra and Korb's sophomore year of college at Yale.  According to the complaint filed by Alexandra and her mother, Korb sexually and physically assaulted Alexandra in her dorm room after a Yale-sponsored back-to-school social event. Defendant Yale

3

allegedly did little to prevent this assault or other similar assaults and did not punish offenders adequately. As a result, Alexandra and her mother are asserting claims of intentional conduct against Korb and negligence, willful misconduct and recklessness against Yale.

The Gerenas claim that shortly after their state complaint was filed, but before service, Yale sent one of its employees to obtain a copy of the state court summons and complaint; Yale disputes whether this occurred and the significance of it. In any event, on May 22, 2007, Yale removed the action to the Southern District of New York on diversity grounds, where it was assigned to Judge Sand. At that point, neither Yale nor Korb had been served with the complaint in the state action, although both obviously were aware of the action, given that Yale had effectuated removal with Korb's consent. The 120-day federal time limit for service of process therefore began to run on May 22, 2007 and expired on September 19, 2007. See Fed. R. Civ. P. 4(m).

## (2)

### Service on the Defendants

**a. Service on Yale**

One month after this 120-day time period expired, on October 29, 2007, plaintiffs served Yale with a state court summons, which Yale believed was insufficient since the case had been removed to federal court. Soon after, Yale moved for dismissal on the ground of improper service, or alternately, for transfer to Connecticut under 28 U.S.C. § 1404(a). About eight months later, on August 1, 2008, plaintiffs finally served Yale with a federal court summons. A

4

few weeks after this, on August 26, 2008, Judge Sand granted Yale's motion to transfer to the District of Connecticut.

**b. Service on Korb**

In their brief, the Gerenas explain that they had a difficult time serving Korb. According to appellants, Korb began studying overseas in the spring of 2007. Korb was originally scheduled to return to the United States at the end of May 2007, but appellants were advised that month by Korb's probation officer that he was remaining overseas. Although appellants apparently attempted to serve Korb through his parents several times during the summer of 2007, and enlisted the Essex County Sheriff to aid in these attempts, Korb's parents repeatedly refused service. The record includes an affidavit of service from an Essex County Sheriff stating: "[U]nable to serve, spoke with the deft's father who refused to accept the papers. The undersigned instructed the father to have his son contact the undersigned. Deft. avoiding service. Undersigned made over 3 attempts."

In December 2007, counsel for Korb filed a motion to dismiss plaintiff's complaint for, inter alia, lack of personal jurisdiction and failure to serve process. On December 13, 2007, however, Judge Sand adjourned both Korb's and Yale's motions to dismiss in order to give plaintiffs an opportunity to properly effect service.

Failed attempts at service on Korb continued throughout the spring of 2008. In summer 2008, plaintiffs made an ex parte motion to Judge Sand to appoint a United States marshal to serve Korb. Judge Sand held a teleconference with the parties shortly thereafter.[1] During this

---

[1] Although the motion for service by marshal was made ex parte, all parties somehow heard about it and had counsel present for the teleconference.

conference, after noting that Korb seemed to be playing a cat-and-mouse game with plaintiffs regarding service, Judge Sand declined to grant Korb's motion to dismiss for lack of personal jurisdiction, explaining that he would not do so "under circumstances which deprived the plaintiffs' counsel of questioning [whether New York personal jurisdiction might exist], for example . . . letting [the Gerenas' attorney] depose Mr. Korb about the extent of his contacts in New York."

Judge Sand granted plaintiffs' ex parte motion for service by marshal on July 8, 2008, stating that "good cause has been shown in support of the application that the defendant Korb has made himself unavailable for service by other means." A Connecticut state marshal finally effected service on Korb on October 1, 2008, after the case had been transferred to Connecticut. United States marshals also served Korb in November 2008.

**(3)**

**Decision Below**

This case came before Judge Eginton of the District of Connecticut in August 2008. In October 2008, Korb renewed his motion to dismiss for untimely service and expiration of the statute of limitations. Yale made motions on the same grounds the following month. Judge Eginton granted both defendants' motions on May 15, 2009. He first found that service on both defendants was untimely, as neither was served within 120 days and no extensions of time for service were requested or granted. Applying Connecticut law, he further found that the Gerenas' claims against both defendants were barred by the relevant statutes of limitations.

6

## Standard of Review

We review a district court's dismissal for failure to timely serve process under Fed. R. Civ. P. 4(m) for abuse of discretion. Zapata v. City of New York, 502 F.3d 192, 195 (2d Cir. 2007); see also Thompson v. Maldonado, 309 F.3d 107, 110 (2d Cir. 2002) (adopting abuse of discretion standard of review for Rule 4(m) dismissals). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." Lynch v. City of New York, 589 F.3d 94, 99 (2d Cir. 2009) (internal quotation marks omitted). A district court's choice of law and its application of a statute of limitations are reviewed de novo as questions of law. See Abdullahi v. Pfizer, Inc., 562 F.3d 163, 190 (2d Cir. 2009); Somoza v. New York City Dep't of Educ., 538 F.3d 106, 112 (2d Cir. 2008).

## Discussion

### (1)

### Dismissal for Failure to Timely Serve

We begin with the district court's decision to dismiss the Gerenas' claims against Yale and Korb for failure to effect timely service under Federal Rule of Civil Procedure 4(m). Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

7

We have interpreted this rule to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause. See Zapata, 502 F.3d at 196. Because we find here that the district court was within the bounds of its discretion in determining that the Gerenas had neither sought nor received an extension of time to serve Yale, we affirm its dismissal of the case against Yale under Rule 4(m). However, for the reasons explained below, it was an abuse of discretion to find that plaintiffs' time to serve Korb had not been extended by Judge Sand prior to transfer.

**a. Dismissal under Rule 4(m) against Yale was proper**

The district court did not abuse its discretion in determining that service on Yale was untimely. Although the Gerenas' case was removed to federal court on May 22, 2007, they did not serve Yale until October 29, 2007, and at that point served only a state court summons. It was not until August 1, 2008 that plaintiffs served Yale with a federal summons.

Appellants primarily argue that Yale had notice of this lawsuit before it was removed to federal court, as evidenced by the fact that Yale had someone pick up a copy of the complaint from the Bronx County Clerk. However, the simple fact that Yale obtained a copy of the state court complaint against it is insufficient for service to be deemed effective under New York law. See Macchia v. Russo, 67 N.Y.2d 592, 594 (1986) ("In a challenge to service of process, the fact that a defendant has received prompt notice of the action is of no moment. Notice by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court." (internal citations omitted)). The Gerenas' additional arguments that Yale waived any jurisdictional objections by removing the action from state to federal court, or by commencing

discovery, are similarly unavailing. Yale promptly and repeatedly raised the defense of defective service. See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 60-63 (2d Cir. 1999); Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 157 n.4 (2d Cir. 1996).

A stronger argument for appellants is that their delivery to Yale of a state court summons might have adequately effected service as of October 29, 2007. There is a clear split of authority on whether or not service of a state court summons, after removal to federal court, is sufficient to effect service. See Minter v. Showcase Sys., Inc., 641 F. Supp. 2d 597 (S.D. Miss. 2009) (collecting cases on both sides – though none from courts in the Second Circuit – and ultimately determining that the view that federal service could be completed by delivery of the state court summons after removal was correct). We need not resolve this question here, however, because even if the state court summons were deemed sufficient, it too was served outside of the 120-day period prescribed for service. See Fed. R. Civ. P. 4(m). Moreover, as Judge Eginton noted, there is no indication that the Gerenas sought an extension of the time to serve Yale from Judge Sand or that Judge Sand ever granted such an extension.

There are some indications in the record that Judge Sand intended to be permissive with the Gerenas in their service of Yale. In particular, the record contains a letter from Yale University to Judge Sand acknowledging that "on December 13, 2007, the Court adjourned defendants' motions to afford plaintiffs an opportunity to properly effect service," suggesting that Judge Sand may have intended to allow untimely service. However, this does not amount to a conclusive extension of time to serve, such that we could say that Judge Eginton abused his discretion in deeming the Gerenas' service of Yale untimely. We are particularly deferential to Judge Eginton's conclusion given that appellants still have advanced no argument as to why they

9

could not timely serve Yale.  Cf. Zapata, 502 F.3d at 196 (when good cause is not shown, whether or not to grant an extension is a discretionary determination).

Because the district court acted within the bounds of its discretion in determining that service on Yale was untimely and that the Gerenas had never been granted an extension of time to serve, its decision to dismiss the suit against Yale is affirmed on this ground.

**b. Failure to timely serve Korb was excused for good cause**

The Gerenas' efforts to serve Korb stand in contrast to their lack of effort to serve Yale. Given the record before this court and the facts as they stood before the district court, we cannot agree with its conclusion that the Gerenas' service on Korb was also defective as untimely.

In his May 2009 opinion, Judge Eginton explained that service on Korb was defective because Korb was untimely served and "there is no indication that plaintiffs sought an extension of time to perfect service or that Korb did evade service upon his return to the United States." This statement, however, is not supported by the record. To the contrary, the record indicates that plaintiffs sought an extension of time to perfect service on Korb, and that Judge Sand granted it.

Specifically, Judge Sand's July 2008 order directing service by United States marshals on Korb operated as an extension of time to serve for good cause. During a June 2008 telephone conference, Judge Sand said the following to Korb's counsel about defendant Korb's avoidance of service:

> [T]here have been efforts to serve Mr. Korb at his parents' home [and] . . . to invoke the Sheriff's Office . . . .  I don't think I can, on the papers before me, conclude that plaintiffs' counsel has taken such ineffective means to effect service that on that ground, . . . his motion [for service by marshal] should be denied . . . . [Y]our letter which

10

points out that Mr. Korb has been within the jurisdiction on a number of occasions and has not been served is a little bit . . . like the little child sticking out his or her tongue and saying, "Nah, nah, you can't catch me." Mr. Korb has been fully aware . . . that the plaintiff is seeking to serve him . . . .

Shortly thereafter, on July 8, 2008, Judge Sand granted plaintiffs' ex parte Motion Appointing Marshal to Serve Defendant Korb, noting that "good cause has been shown in support of the application that the defendant Korb has made himself unavailable for service by other means . . . ."

Korb argues that service was nevertheless untimely because although Judge Sand's order may have included a finding that good cause had been shown for service by marshal, "this does not equate to a good cause finding that the Rule 4(m) service time should be extended." Brief of Def.-Appellee Gregory Korb at 10. This argument, however, is implausible. It makes no sense that Judge Sand would order service by marshal almost a year after service originally should have been accomplished while not also intending to extend the time to serve. A decision to allow service by marshal at this point in the litigation implicitly included a decision to allow late service.

Moreover, the "good cause" language used in Judge Sand's order likely references Rule 4(m), regarding timeliness of service, not Rule 4(c)(3), permitting service by marshal. Rule 4(c)(3) does not use the phrase "good cause," but rather simply provides: "At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). In contrast, Rule 4(m) specifically states that "if the plaintiff shows good cause for the failure [to serve], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Accordingly, Judge

Sand's order stating that "good cause" had been shown is best read as a finding that the plaintiffs' failed attempts at service warranted an extension of time to serve, as well as a grant of permission to use the alternative method of service by marshal. And once this good cause finding was made, an extension of time to serve was mandatory, not discretionary. See Fed. R. Civ. P. 4(m); see also Blessinger v. United States, 174 F.R.D. 29, 31 (E.D.N.Y. 1997) ("If the plaintiff has shown good cause, the extension is mandatory.").

We note that Judge Sand's extension on time to serve did not specify a time by which service was to be completed, despite Rule 4(m)'s instruction that extensions on time to serve should be made "for an appropriate period." It would have avoided an unnecessary issue had the time been specified. In this case, the appropriate period by which to extend time to serve likely would have been the time it took the marshals to serve. However, no argument has been raised that Judge Sand abused his discretion by not setting an "appropriate period" for service. Accordingly, we need not consider at this point the necessity of a district court explicitly defining an "appropriate period" when extending time to serve. Cf. In re Wireless Data, Inc., 547 F.3d 484, 491-92 (2d Cir. 2008) (finding argument not raised on appeal to be waived).

Based on the record in this case prior to transfer, we conclude that the district court clearly erred in finding that no extension of time to serve had previously been sought by plaintiffs; one had been sought and had been granted by Judge Sand, along with an order for United States marshals to effect service. We thus reverse the district court's determination that Korb was not timely served.

12

**(2)**

**Dismissal under the Statute of Limitations**

The district court provided a second ground upon which it dismissed the claims against both Korb and Yale: the untimeliness of the Gerenas' claims under the applicable Connecticut statutes of limitations. The district court reached this result by applying Connecticut choice of law, and thus Connecticut's limitations period, without discussion. But there was a preliminary choice of law issue here that the district court failed to acknowledge.

Federal courts sitting in diversity generally apply the law of the state in which they sit. However, cases that are transferred from one federal district to another present an exception to this general rule. When an action has been transferred, a federal court sitting in diversity must determine whether to apply the law of the transferor state, or the law of the transferee state in which it sits. If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, or 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option. See Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995) (transferee laws apply after transfer under § 1406(a)); Levy v. Pyramid Co. of Ithaca, 871 F.2d 9, 10 (2d Cir. 1989) (transferee laws apply after transfer for lack of personal jurisdiction). In contrast, when a case is transferred for convenience under 28 U.S.C. § 1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction. See Van Dusen v. Barrack, 376 U.S. 612, 635-39 (1964); Fin. One Public Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 333-34 (2d Cir. 2005); SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 179-80 (2d Cir. 2000) ("[I]n a transferred action the law of the transferor

13

jurisdiction applies . . . only if the transferor court has personal jurisdiction." (internal citation omitted)).

In the instant case, the district court failed to consider that New York choice of law might apply, since Judge Sand appears to have granted Yale's motion to transfer the case to Connecticut under 28 U.S.C. § 1404(a), for convenience. Yale specified that its motion was not being made for lack of personal jurisdiction, but rather "for the convenience of parties and witnesses, in the interest of justice." To be sure, Judge Sand's brief handwritten order did not specify which provision he was transferring under, but simply stated: "The motion to transfer the case to the District of Connecticut is granted in the interest of justice."[2] However, given that the motion being granted requested transfer under § 1404(a), it seems reasonably clear that Judge Sand intended to transfer the action for convenience's sake without ever making a finding regarding personal jurisdiction. Therefore, New York law, as the governing law of the transferor court, should still have been applied by the District of Connecticut, as long as jurisdiction in New York would have been proper. Cf. SongByrd, Inc., 206 F.3d at 179-80.

Of course, if jurisdiction was not proper in New York, then the district court correctly applied Connecticut choice of law and Connecticut procedure. With respect to Yale, the issue need not be further explored, given that we are affirming the district court's opinion on the alternate ground that Yale was not timely served. However, with respect to Korb, whom we now

---

[2] The language "in the interest of justice" is present in all three of the transfer provisions. See 28 U.S.C. § 1404(a) (permitting transfer "[f]or the convenience of parties and witnesses, in the interest of justice"); 28 U.S.C. § 1406(a) (permitting a district court to transfer a case which is filed "laying venue in the wrong division or district . . . if it be in the interest of justice"); 28 U.S.C. § 1631 (permitting transfer if a "court finds that there is a want of jurisdiction . . . if it is in the interest of justice").

14

deem properly served, it must be determined whether personal jurisdiction over Korb existed in New York, such that New York choice of law should have governed the claims against him.

This is not a determination we are equipped to make in the first instance. Although Korb vigorously disputed whether personal jurisdiction over him could be obtained in New York, the district court made no finding in this regard. Judge Sand, before he transferred, expressed the opinion that dismissal on jurisdictional grounds would have been inappropriate absent an inquiry into the extent of Korb's contacts in New York. Korb himself admits that he was employed in New York for approximately nine months in 2006. Moreover, in plaintiffs' ex parte motion to Judge Sand to appoint a United States marshal to serve Korb, they explain that in March 2008, Korb's probation officer communicated to the Gerenas that Korb was in Europe and "planning to attend NYU." Given that Korb clearly had some contacts with New York, we must ask the district court to consider more thoroughly whether Korb might have been subject to personal jurisdiction in New York, such that New York choice of law principles should govern the action against him.

If the district court determines on remand that Connecticut law properly governs, we agree with its conclusion that the Gerenas' claims are barred under Connecticut law by the three-year limitations period contained in Conn. Gen. Stat. § 52-577. Although appellants urge that Conn. Gen. Stat. § 52-590, which allows for tolling when a defendant is absent from the state, should save their claims, this provision applies only when "by reason of the defendant's absence, it was impossible to commence an action in personam against the defendant." Venables v. Bell, 941 F. Supp. 26, 27 (D. Conn. 1996) (quoting Dorus v. Lyon, 92 Conn. 55, 57, 101 A. 490 (1917)); see also Cadlerock Joint Venture II, L.P. v. Milazzo, 287 Conn. 379, 392-93, 949 A.2d 450, 457-58

15

(2008). Because Connecticut's long-arm statute authorizes personal jurisdiction over nonresidents who commit tortious acts within the state, Conn. Gen. Stat. § 52-590 is inapplicable. See Conn. Gen. Stat. § 52-59b(a). Under section 52-59b, the Gerenas could have served Korb at any point by serving the secretary of state and mailing a copy of the process to the defendant's last known address. See Conn. Gen. Stat. § 52-59b(c). Furthermore, the possibility that equitable tolling might apply here is foreclosed by Connecticut precedent, which establishes Conn. Gen. Stat. § 52-577 as a statute of repose not susceptible to equitable tolling. See Carter v. Univ. of Conn., 04-cv-1625, 2006 WL 2130730, at *3 (D. Conn. July 28, 2006), aff'd, 264 Fed. App'x. 111, 232 Ed. Law Rep. 104 (2d Cir. 2008).

On the other hand, if it is determined that New York law should govern, the outcome of the inquiry into the timeliness of the Gerenas' claims might be different. We leave it to the district court to determine in the first instance, if necessary, how New York law should be applied to the facts of this case. However, because we find the analysis a difficult one, we offer a few thoughts on how a New York choice of law analysis might proceed. Whereas Connecticut law would almost certainly govern the substantive aspects of this case under New York choice of law, New York still adheres to the traditional substantive/procedural dichotomy in its choice of law analysis and generally classifies statutes of limitations as procedural, except for those limitations periods which it designates as statutes of repose. See Tanges v. Heidelberg N. Am., Inc., 93 N.Y.2d 48, 58-59, 710 N.E.2d 250, 254-55, 687 N.Y.S.2d 604, 608-09 (1999); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 626-27 (2d Cir. 1998) ("New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York.").

New York's statute of limitations would thus probably govern the Gerena's claims under New York choice of law. Although Connecticut has categorized Conn. Gen. Stat. § 52-577's three-year limitations period as a statute of repose, we doubt that New York courts, under the framework laid out by the New York Court of Appeals in Tanges, would agree for purposes of New York choice of law. Cf. Tanges, 93 N.Y.2d at 93 (finding Connecticut's own classification only instructive, not binding). First, the structure and legislative history of section 52-577 do not suggest that its limitations period was intended to create a right, rather than merely "erect[] a limitation around the existing common-law causes." Tanges, 93 N.Y.2d at 56-57; see also Sanborn v. Greenwald, 39 Conn. App. 289, 304-05, 664 A.2d 803, 811-12 (Conn. App. 1995) (finding that section 52-577 did not restrict a cause of action "but, rather, only establishe[d] the time period in which a plaintiff must assert this right"). Furthermore, there is no compelling policy rationale for New York to interpret section 52-577, which merely sets forth a general torts limitations period, as a statute of repose. Unlike in the products liability context addressed in Tanges, where there is justifiable reliance by manufacturers and their insurers on the inability of plaintiffs to bring suit after a certain period of time, there is no analogous justifiable reliance by general tortfeasors. Moreover, New York's policy of always giving its residents the benefit of New York's own statute of limitations, see N.Y. C.P.L.R. § 202, would be undercut – in all those cases in which a resident was injured in the adjacent state of Connecticut – if New York were to treat Connecticut's general three-year limit for all general tort actions as a statute of repose. Accordingly, it seems likely that New York would look to its own laws, rather than to Conn. Gen. Stat. § 52-577, to determine the timeliness of this action.

17

Under New York law, an action is "commenced" upon filing, not upon service on the defendant.  See N.Y. C.P.L.R. § 304; Gershel v. Porr, 89 N.Y.2d 327, 330-31, 675 N.E.2d 836, 838, 653 N.Y.S.2d 82, 84 (1996).  Therefore, under New York's commencement rule, the Gerenas' claims were commenced April 24, 2007.  And because New York provides that a plaintiff shall have one year from the termination of any criminal proceedings against a defendant to commence a related civil action, see N.Y. C.P.L.R. § 215(8)(a), it appears that the Gerenas' claims, which were brought within one year of Korb's no-contest plea for related misdemeanor offenses on October 30, 2006, were timely under New York law.

## CONCLUSION

For the foregoing reasons, the opinion of the district court is affirmed in part and reversed in part, and the case is REMANDED for a determination of whether personal jurisdiction over Korb existed in New York, and for further proceedings consistent with this opinion.