OPINION OF THE COURT
 

 Chief Judge Wachtler.
 

 The backdrop for this replevin action
 
 (see,
 
 CPLR art 71) is the New York City art market, where masterpieces command extraordinary prices at auction and illicit dealing in stolen merchandise is an industry all its own. The Solomon R. Guggenheim Foundation, which operates the Guggenheim Museum in New York City, is seeking to recover a Chagall gouache worth an estimated $200,000. The Guggenheim believes that the gouache was stolen from its premises by a mailroom employee sometime in the late 1960s. The appellant Rachel Lubell and her husband, now deceased, bought the painting from a well-known Madison Avenue gallery in 1967 and have displayed it in their home for more than 20 years. Mrs. Lubell claims that before the Guggenheim’s demand for its return in 1986, she had no reason to believe that the painting had been stolen.
 

 On this appeal, we must decide if the museum’s failure to take certain steps to locate the gouache is relevant to the appellant’s Statute of Limitations defense. In effect, the appellant argues that the museum had a duty to use reason
 
 *315
 
 able diligence to recover the gouache, that it did not do so, and that its cause of action in replevin is consequently barred by the Statute of Limitations. The Appellate Division rejected the appellant’s argument. We agree with the Appellate Division that the timing of the museum’s demand for the gouache and the appellant’s refusal to return it are the only relevant factors in assessing the merits of the Statute of Limitations defense. We see no justification for undermining the clarity and predictability of this rule by carving out an exception where the chattel to be returned is a valuable piece of art. Appellant’s affirmative defense of laches remains viable, however, and her claims that the museum did not undertake a reasonably diligent search for the missing painting will enter into the trial court’s evaluation of the merits of that defense. Accordingly, the order of the Appellate Division should be affirmed.
 

 The gouache, known alternately as
 
 Menageries
 
 or
 
 Le Marchand de Bestiaux (The Cattle Dealer),
 
 was painted by Marc Chagall in 1912, in preparation for an oil painting also entitled
 
 Le Marchand de Bestiaux.
 
 It was donated to the museum in 1937 by Solomon R. Guggenheim.
 

 The museum keeps track of its collection through the use of "accession cards,” which indicate when individual pieces leave the museum on loan, when they are returned and when they are transferred between the museum and storage. The museum lent the painting to a number of other art museums over the years. The last such loan occurred in 1961-1962. The accession card for the painting indicates that it was seen in the museum on April 2, 1965. The next notation on the accession card is undated and indicates that the painting could not be located.
 

 Precisely when the museum first learned that the gouache had been stolen is a matter of some dispute. The museum acknowledges that it discovered that the painting was not where it should be sometime in the late 1960s, but claims that it did not know that the painting had in fact been stolen until it undertook a complete inventory of the museum collection beginning in 1969 and ending in 1970. According to the museum, such an inventory was typically taken about once every 10 years. The appellant, on the other hand, argues that the museum knew as early as 1965 that the painting had been stolen. It is undisputed, however, that the Guggenheim did not inform other museums, galleries or artistic organizations of
 
 *316
 
 the theft, and additionally, did not notify the New York City Police, the FBI, Interpol or any other law enforcement authorities. The museum asserts that this was a tactical decision based upon its belief that to publicize the theft would succeed only in driving the gouache further underground and greatly diminishing the possibility that it would ever be recovered. In 1974, having concluded that all efforts to recover the gouache had been exhausted, the museum’s Board of Trustees voted to "deaccession” the gouache, thereby removing it from the museum’s records.
 

 Mr. and Mrs. Lubell had purchased the painting from the Robert Elkon Gallery for $17,000 in May of 1967. The invoice and receipt indicated that the gouache had been in the collection of a named individual, who later turned out to be the museum mailroom employee suspected of the theft. They exhibited the painting twice, in 1967 and in 1981, both times at the Elkon Gallery. In 1985, a private art dealer brought a transparency of the painting to Sotheby’s for an auction estimate. The person to whom the dealer showed the transparency had previously worked at the Guggenheim and recognized the gouache as a piece that was missing from the museum. She notified the museum, which traced the painting back to the defendant. On January 9, 1986, Thomas Messer, the museum’s director, wrote a letter to the defendant demanding the return of the gouache. Mrs. Lubell refused to return the painting and the instant action for recovery of the painting, or, in the alternative, $200,000, was commenced on September 28, 1987.
 

 In her answer, the appellant raised as affirmative defenses the Statute of Limitations, her status as a good-faith purchaser for value, adverse possession, laches, and the museum’s culpable conduct. The museum moved to compel discovery and inspection of the gouache and the defendant cross-moved for summary judgment. In her summary judgment papers, the appellant argued that the replevin action to compel the return of the painting was barred by the three-year Statute of Limitations because the museum had done nothing to locate its property in the 20-year interval between the theft and the museum’s fortuitous discovery that the painting was in Mrs. Lubell’s possession. The trial court granted the appellant’s cross motion for summary judgment, relying on
 
 DeWeerth v Baldinger
 
 (836 F2d 103), an opinion from the United States Court of Appeals for the Second Circuit. The trial court cited New York cases holding that a cause of action in replevin
 
 *317
 
 accrues when demand is made upon the possessor and the possessor refuses to return the chattel. The court reasoned, however, that in order to avoid prejudice to a good-faith purchaser, demand cannot be unreasonably delayed and that a property owner has an obligation to use reasonable efforts to locate its missing property to ensure that demand is not so delayed. Because the museum in this case had done nothing for 20 years but search its own premises, the court found that its conduct was unreasonable as a matter of law. Consequently, the court granted Mrs. Lubell’s cross motion for summary judgment on the grounds that the museum’s cause of action was time barred.
 

 The Appellate Division modified, dismissing the Statute of Limitations defense and denying the appellant’s cross motion for summary judgment. The Appellate Division held that the trial court had erred in concluding that "delay alone can make a replevin action untimely” (153 AD2d 143, 149). The court stated that the appellant’s lack of diligence argument was more in the nature of laches than the Statute of Limitations and that as a result, the appellant needed to show that she had been prejudiced by the museum’s delay in demanding return of the gouache
 
 (id.).
 
 The court also held that summary judgment was inappropriate because several issues of fact existed, including whether the museum’s response to the theft was unreasonable, when the museum first realized that the gouache was missing, when the museum should have realized that the gouache had been stolen, whether it was unreasonable for the museum not to have taken certain steps after it realized that the gouache was missing but before it realized that it had been stolen, and when the museum learned of the defendant’s possession of the gouache
 
 (id.,
 
 at 151-152). The Appellate Division granted leave to this Court, certifying the following question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?” We answer this certified question in the affirmative.
 

 New York case law has long protected the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value
 
 (see, Saltus & Saltus v Everett,
 
 20 Wend 267, 282). There is a three-year Statute of Limitations for recovery of a chattel (CPLR 214 [3]). The rule in this State is that a cause of action for replevin against the good-faith purchaser of a stolen chattel accrues when the true owner makes demand for return of the chattel and the person in possession of the
 
 *318
 
 chattel refuses to return it
 
 (see, e.g., Goodwin v Wertheimer,
 
 99 NY 149, 153;
 
 Cohen v Keizer, Inc.,
 
 246 App Div 277). Until demand is made and refused, possession of the stolen property by the good-faith purchaser for value is not considered wrongful
 
 (see, e.g., Gillet v Roberts,
 
 57 NY 28, 30-31;
 
 Menzel v List,
 
 49 Misc 2d 300, 304-305,
 
 mod as to damages
 
 28 AD2d 516,
 
 revd as to modification
 
 24 NY2d 91). Although seemingly anomalous, a different rule applies when the stolen object is in the possession of the thief. In that situation, the Statute of Limitations runs from the time of the theft
 
 (see, Sporn v MCA Records,
 
 58 NY2d 482, 487-488), even if the property owner was unaware of the theft at the time that it occurred
 
 (see, Varga v Credit Suisse,
 
 5 AD2d 289, 292-293,
 
 affd
 
 5 NY2d 865).
 

 In
 
 DeWeerth v Baldinger (supra),
 
 which the trial court in this case relied upon in granting Mrs. LubelVs summary judgment motion, the Second Circuit took note of the fact that New York case law treats thieves and good-faith purchasers differently and looked to that difference as a basis for imposing a reasonable diligence requirement on the owners of stolen art. Although the court acknowledged that the question posed by the case was an open one, it declined to certify it to this Court
 
 (see,
 
 22 NYCRR 500.17), stating that it did not think that it "[would] recur with sufficient frequency to warrant use of the certification procedure” (836 F2d, at 108, n 5). Actually, the issue has recurred several times in the three years since
 
 DeWeerth
 
 was decided
 
 (see, e.g., Republic of Turkey v Metropolitan Museum of Art,
 
 No. 87 Civ 3750 [VLB], slip opn [SD NY July 16, 1990]), including the case now before us. We have reexamined the relevant New York case law and we conclude that the Second Circuit should not have imposed a duty of reasonable diligence on the owners of stolen art work for purposes of the Statute of Limitations.
 

 While the demand and refusal rule is not the only possible method of measuring the accrual of replevin claims, it does appear to be the rule that affords the most protection to the true owners of stolen property. Less protective measures would include running the three-year statutory period from the time of the theft even where a good-faith purchaser is in possession of the stolen chattel, or, alternatively, calculating the statutory period from the time that the good-faith purchaser obtains possession of the chattel
 
 (see generally,
 
 Weil,
 
 Repose,
 
 8 IFAR [Inti Found for Art Research] Rep, at 6-7 [Aug.-Sept. 1987]). Other States that have considered this issue have applied a discovery rule to these cases, with the Statute
 
 *319
 
 of Limitations running from the time that the owner discovered or reasonably should have discovered the whereabouts of the work of art that had been stolen
 
 (see, e.g., O’Keefe v Snyder,
 
 83 NJ 478, 416 A2d 862; Cal Civ Proc Code § 338 [c]).
 

 New York has already considered — and rejected — adoption of a discovery rule. In 1986, both houses of the New York State Legislature passed Assembly Bill 11462-A (Senate Bill 3274-B), which would have modified the demand and refusal rule and instituted a discovery rule in actions for recovery of art objects brought against certain not-for-profit institutions. This bill provided that the three-year Statute of Limitations would run from the time these institutions gave notice, in a manner specified by the statute, that they were in possession of a particular object. Governor Cuomo vetoed the measure, however, on advice of the United States Department of State, the United States Department of Justice and the United States Information Agency
 
 (see, 3 U.S. Agencies Urge Veto of Art-Claim Bill,
 
 NY Times, July 23, 1986, at C15, col 1). In his veto message, the Governor expressed his concern that the statute "[did] not provide a reasonable opportunity for individuals or foreign governments to receive notice of a museum’s acquisition and take action to recover it before their rights are extinguished.” The Governor also stated that he had been advised by the State Department that the bill, if it went into effect, would have caused New York to become "a haven for cultural property stolen abroad since such objects [would] be immune from recovery under the limited time periods established by the bill.”
 

 The history of this bill and the concerns expressed by the Governor in vetoing it, when considered together with the abundant case law spelling out the demand and refusal rule, convince us that that rule remains the law in New York and that there is no reason to obscure its straightforward protection of true owners by creating a duty of reasonable diligence. Our case law already recognizes that the true owner, having discovered the location of its lost property, cannot unreasonably delay making demand upon the person in possession of that property
 
 (see, e.g., Heide v Glidden Buick Corp.,
 
 188 Misc 198). Here, however, where the demand and refusal is a substantive and not a procedural element of the cause of action
 
 (see, Guggenheim Found, v Lubell,
 
 153 AD2d, at 147;
 
 Menzel v List,
 
 22 AD2d 647;
 
 compare,
 
 CPLR 206 [where a demand is necessary to entitle a person to commence an action, the time to commence that action is measured from
 
 *320
 
 when the right to make demand is complete]), it would not be prudent to extend that case law and impose the additional duty of diligence before the true owner has reason to know where its missing chattel is to be found.
 

 Further, the facts of this case reveal how difficult it would be to specify the type of conduct that would be required for a showing of reasonable diligence. Here, the parties hotly contest whether publicizing the theft would have turned up the gouache. According to the museum, some members of the art community believe that publicizing a theft exposes gaps in security and can lead to more thefts; the museum also argues that publicity often pushes a missing painting further underground. In light of the fact that members of the art community have apparently not reached a consensus on the best way to retrieve stolen art
 
 (see,
 
 Burnham, Art Theft: Its Scope, Its Impact and Its Control), it would be particularly inappropriate for this Court to spell out arbitrary rules of conduct that all true owners of stolen art work would have to follow to the letter if they wanted to preserve their right to pursue a cause of action in replevin. All owners of stolen property should not be expected to behave in the same way and should not be held to a common standard. The value of the property stolen, the manner in which it was stolen, and the type of institution from which it was stolen will all necessarily affect the manner in which a true owner will search for missing property. We conclude that it would be difficult, if not impossible, to craft a reasonable diligence requirement that could take into account all of these variables and that would not unduly burden the true nwner.
 

 Further, our decision today is in part influenced by our recognition that New York enjoys a worldwide reputation as a preeminent cultural center. To place the burden of locating stolen artwork on the true owner and to foreclose the rights of that owner to recover its property if the burden is not met would, we believe, encourage illicit trafficking in stolen art. Three years after the theft, any purchaser, good faith or not, would be able to hold onto stolen art work unless the true owner was able to establish that it had undertaken a reasonable search for the missing art. This shifting of the burden onto the wronged owner is inappropriate. In our opinion, the better rule gives the owner relatively greater protection and places the burden of investigating the provenance of a work of art on the potential purchaser.
 

 
 *321
 
 Despite our conclusion that the imposition of a reasonable diligence requirement on the museum would be inappropriate for purposes of the Statute of Limitations, our holding today should not be seen as either sanctioning the museum’s conduct or suggesting that the museum’s conduct is no longer an issue in this case. We agree with the Appellate Division that the arguments raised in the appellant’s summary judgment papers are directed at the conscience of the court and its ability to bring equitable considerations to bear in the ultimate disposition of the painting. As noted above, although appellant’s Statute of Limitations argument fails, her contention that the museum did not exercise reasonable diligence in locating the painting will be considered by the Trial Judge in the context of her laches defense. The conduct of both the appellant and the museum will be relevant to any consideration of this defense at the trial level, and as the Appellate Division noted, prejudice will also need to be shown (153 AD2d, at 149). On the limited record before us there is no indication that the equities favor either party. Mr. and Mrs. Lubell investigated the provenance of the gouache before the purchase by contacting the artist and his son-in-law directly. The Lubells displayed the painting in their home for more than 20 years with no reason to suspect that it was not legally theirs. These facts will doubtless have some impact on the final decision regarding appellant’s laches defense. Because it is impossible to conclude from the facts of this case that the museum’s conduct was unreasonable as a matter of law, however, Mrs. Lubell’s cross motion for summary judgment was properly denied.
 

 We agree with the Appellate Division, for the reasons stated by that court, that the burden of proving that the painting was not stolen properly rests with the appellant Mrs. Lubell. We have considered her remaining arguments, and we find them to be without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, etc.