**SONGBYRD, INC., Plaintiff,**

v.

**ESTATE OF Albert B. GROSSMAN, dba Bearsville Records, Inc., Defendant.**

**No. 97–CV–698 (DRH).**

United States District Court, N.D. New York.

Sept. 21, 1998.

**220**

Heslin & Rothenberg. P.C., Albany, NY (Robert E. Heslin, of counsel), Justin A. Zitler, New Orleans, LA, for Plaintiff.

Ryan, Orlando & Smallacombe, LLP, Albany, NY (Melissa J. Smallacombe, Mario D. Cometti, of counsel), Simon, Peragine, Smith & Redfearn, New Orleans, LA (Christina A.H. Belew, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff Songbyrd, Inc. ("Songbyrd") brought this action seeking monetary damages and a declaration of rights in certain recorded music tracks. Presently pending is a motion by defendant Estate of Albert B. Grossman, doing business as Bearsville Records, Inc. ("Bearsville") for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that the action is barred by the applicable statute of limitations. Docket No. 40. Songbyrd opposes the motion. Docket No. 43. For the reasons which follow, the motion is granted.

### I. Facts [1]

This case concerns the possession, ownership, and usage of several master recordings of musical performances made in the early 1970s by New Orleans musician Henry Roeland Byrd, who was professionally known as "Professor Longhair" ("Byrd").[2] The tapes were produced in a Baton Rouge, Louisiana recording studio and soon thereafter came into the possession of a predecessor in interest to Bearsville located in Woodstock, New York. Over time several requests have been made by representatives of Byrd to secure return of the tapes. Cometti Aff. (Docket No. 40), ¶ 10. It is unclear what if any response those requests received, but the tapes have remained in the physical custody of Bearsville continuously since the 1970s. *Id.* at ¶ 11.

In August 1986, Bearsville licensed certain of the master recordings to Rounder Records

---

1. The undisputed facts of this matter, including its musical background and context, are detailed in an earlier opinion from the Fifth Circuit Court of Appeals. *See Songbyrd, Inc. v. Bearsville Records, Inc.,* 104 F.3d 773, 774–75 (5th Cir.1997).

2. Songbyrd incorporated in 1993 and conducts business as a successor in interest to Byrd.

Corporation, which in 1987 released an album of Byrd's music produced from the recordings. Cometti Aff., ¶ 12. In 1991, another recording based on the disputed master recordings was released by Rhino Records. That release was made possible by a licensing agreement between Bearsville and the production company. *Id.* at ¶ 13.

## II. Procedural Background

Originally filed in Louisiana state court in 1995, this action was removed by Bearsville to the United States District Court for the Eastern District of Louisiana. Docket No. 1. Bearsville then moved pursuant to Fed. R.Civ.P. 12(b) to dismiss the claim on the ground that the court lacked personal jurisdiction and the claim was barred by Louisiana's period of prescription.[3] The district court held that the action was barred by the applicable prescriptive period and granted the motion without addressing the jurisdictional question. *Songbyrd, Inc. v. Bearsville Records, Inc.,* Civ.A. No. 95–3706, 1996 WL 337259 (E.D.La. June 18, 1996). Songbyrd appealed and the Fifth Circuit Court of Appeals reversed, holding that the claim was not prescribed under Louisiana law. 104 F.3d 773, 779 (5th Cir.1997). On remand, the district court considered the question of personal jurisdiction, concluded that jurisdiction was lacking, and transferred the action to this district. Docket No. 40, Ex. E. The present motion followed.

## III. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law, ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the movant has come forward with sufficient evidence in support of the motion for sum-

mary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.'" *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996) (citations omitted).

## IV. Discussion

### A. Choice of Law

When venue is originally placed in one jurisdiction and then transferred to another, it is generally the law of the transferor jurisdiction that applies in the new court. *Ferens v. John Deere Co.,* 494 U.S. 516, 523, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). An exception exists when the transfer is made on the ground that the venue was improperly laid in the first instance, i.e., that the original court lacked personal jurisdiction over the defendant, rather than simply for the convenience of the parties. In those cases the transferee court applies the law of the forum in which it sits. *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996); *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir.1993); *Manley v. Engram,* 755 F.2d 1463, 1467 n. 10 (11th Cir.1985); *Davis v. Louisiana State Univ.,* 876 F.2d 412, 414 (5th Cir.1989). The exception applies here because this action was transferred on the ground that the Louisiana court lacked jurisdiction. Docket No. 40, Ex. E. Both parties agree that under these circumstances, disposition of this case is governed by New York law.

---

**3.** The period of prescription in civil law jurisdictions like Louisiana is roughly synonymous with the common law concept of a statute of limita-

tions. *See FDIC v. Barton,* 96 F.3d 128, 131 n. 2 (5th Cir.1996).

## B. New York Statute of Limitations

This action is governed by the three year statute of limitations for recovery of chattel provided in N.Y. Civ. Prac. L. & R. § 214(3) (McKinney 1990) *Johnson v. Smithsonian Inst.*, 9 F.Supp.2d 347, 354 (S.D.N.Y.1998) (New York statute of limitations for conversion and replevin is three years). The issue presented here is when the claim accrued for statute of limitations purposes.

■ The statute of limitations for conversion begins to run at the time of the conversion. *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 462 N.Y.S.2d 413, 416, 448 N.E.2d 1324 (1983); *see also Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso, Tex.*, 87 N.Y.2d 36, 637 N.Y.S.2d 342, 347, 660 N.E.2d 1121 (1995). In *Sporn*, New York's Court of Appeals was presented with a case very similar to the case at bar. There, the plaintiff, the successor in interest to the purported owner of rights in certain master recordings, sued the defendant record company for commercially exploiting the master recordings contrary to the plaintiff's interests. *Sporn*, 462 N.Y.S.2d at 414–15, 448 N.E.2d 1324. The record company defended on the ground that the three year limitations period had begun to run at the time it began using the master recordings contrary to the plaintiff's purported interest and had expired prior to the commencement of the action. Holding that the statute of limitations for conversion begins to run at the time of the conversion, the Court of Appeals affirmed the grant of summary judgment in favor of the record company. *Id.* 462 N.Y.S.2d at 416.

Songbyrd contends that *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991) ("*Guggenheim* "), not *Sporn*, governs this action. In *Guggenheim*, the New York Court of Appeals held that "a cause of action for replevin against a good-faith purchaser of a stolen chattel accrues when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." *Id.* 567 N.Y.S.2d at 626. Songbyrd argues that under *Guggenheim* the statute of limitations does not begin to run until after a demand for return has been refused, that such a demand has been made but not refused here and as a result the limitations period has not yet begun to run. *Guggenheim*, however, addresses the different circumstance of possession of a chattel by a bona fide purchaser for value and does not, therefore, provide the controlling rule of law here.

*Guggenheim*, in fact, recognized that a different rule applies when the stolen chattel remains in the possession of the thief. Citing *Sporn*, the court stated that in such a circumstance the statute of limitations begins to run from the time of the theft. *Guggenheim*, 567 N.Y.S.2d at 626, 569 N.E.2d 426. Here, the chattel at issue has remained in the possession of Bearsville, the party alleged to have committed the wrongful taking. There is no evidence that Bearsville was ever a bona fide purchaser for value. Thus, the statute of limitations here began to run at the time Bearsville converted the master recordings. *See Vigilant Ins. Co.*, 637 N.Y.S.2d at 347, 660 N.E.2d 1121 (in a case not involving a bona fide purchaser, a conversion claim accrues at the time of the conversion). Thus, *Guggenheim* is limited to circumstances involving a bona fide purchaser's possession of the chattel.

■ Having concluded that Songbyrd's conversion claim accrued at the time of the conversion, the question becomes when the master recordings were allegedly converted. "The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." *Key Bank of N.Y. v. Grossi*, 227 A.D.2d 841, 642 N.Y.S.2d 403, 405 (3d Dep't 1996). A party acts to the exclusion of the rights of another by exercising dominion and control over the property that is inconsistent with the interests of the true owner. *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F.Supp. 674, 682 (S.D.N.Y.1987). Accepting this definition of conversion, the decisive issue is when Bearsville began unauthorized possession of the master recordings.

■ Bearsville undeniably had lawful and authorized possession of the master tapes when they were first transferred to its predecessor in 1972. In August 1986, the master recordings were licensed by Bearsville

 

to Rounder Records. The result of this agreement was the 1987 release of an album of Byrd's music taken from the master recordings. This licensing agreement clearly demonstrated Bearsville's intent to exercise control over the Byrd recordings to the exclusion of Songbyrd. *See Jaywyn Video Productions, Ltd. v. Servicing All Media, Inc.,* 179 A.D.2d 397, 577 N.Y.S.2d 847, 848 (1st Dep't 1992) (licensing of property rights demonstrates exercise of dominion and control). Any claim for conversion, therefore, accrued no later than August 1986 and was time barred at the time this action was filed in 1995.[4] That Songbyrd may not have known of the conversion at the time it occurred is of no moment. *Two Clinton Square Corp. v. Friedler,* 91 A.D.2d 1193, 459 N.Y.S.2d 179 (4th Dep't 1983); *Memorial Hosp. v. McGreevy,* 152 Misc.2d 127, 574 N.Y.S.2d 923, 925 (1991) (claim accrues at time of conversion "even though the plaintiff may have been unaware of the occurrence.").[5]

Where, as here, "[t]he conduct of the defendant certainly constituted a denial of both the plaintiff's right to the master recording and a total usurping of plaintiff's right to possess the master recording," the claim is properly stated as one for conversion. *Sporn,* 462 N.Y.S.2d at 416, 448 N.E.2d 1324. That claim is clearly untimely. The time bar arose in August 1989, three years following the licensing agreement with Rounder Records.[6] Conversion is not a continuing wrong for which every new act that might constitute conversion restarts a new limitations period. *Tinker v. Abrams,* 640 F.Supp. 229, 232 (S.D.N.Y.1986) (citing *Sporn,* 462 N.Y.S.2d at 415–16, 448 N.E.2d 1324). Here, Songbyrd simply failed to commence this action within the applicable statute of limitations. Bearsville's motion must, therefore, be granted.

## V. Conclusion

**WHEREFORE,** for the reasons set forth above, it is hereby

**ORDERED** that the defendant's motion for summary judgment is **GRANTED;** and

**IT IS FURTHER ORDERED** that the Clerk of the Court serve a copy of this order, by regular mail, upon all parties to this action.

**IT IS SO ORDERED.**

---

4. Songbyrd has not argued that any tolling provision applies here.

5. Songbyrd's assertion that the decision from the Fifth Circuit precludes consideration of the licensing agreement's effect on the statute of limitations is misplaced. That decision concerned Louisiana law, not the New York law applicable here.

6. In the alternative the conversion occurred no later than August 1991 when Bearsville licensed the master recordings to Rhino Records. That agreement resulted in the 1991 Rhino Records release of an album containing seven tracks produced from the master recordings. The exact date of the Rhino Records licensing deal is not clear in the record but necessarily occurred in or before 1991. Thus, with 1991 as the date of conversion, Songbyrd's claim was time barred prior to the commencement of this action in 1995.