24-809-cv
*Reif v. Art Institute of Chicago*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand twenty-five.

PRESENT:   GUIDO CALABRESI,
           SARAH A. L. MERRIAM,
               *Circuit Judges*.
           JED S. RAKOFF,
               *District Judge*.[*]

_____

TIMOTHY REIF and DAVID FRAENKEL,
as Co-Trustees of the Leon Fischer Trust
for the Life and Work of Fritz Grünbaum;
MILOS VAVRA,

    *Plaintiffs-counter-defendants-appellants*,

       v.                                                                24-809-cv

THE ART INSTITUTE OF CHICAGO,

    *Defendant-counter-claimant-appellee*.

_____

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

_____

FOR APPELLANTS:                    RAYMOND J. DOWD (Claudia G. Jaffe, Jeffrey F. Kinkle, *on the brief*), Dunnington, Bartholow & Miller LLP, New York, NY; Dennis E. Glazer, *on the brief*, Dennis E. Glazer, Esq., Bronxville, NY.

FOR APPELLEE:                      MARK R. YOHALEM (Luis Li, Matthew K. Donohue, Julia Hu, *on the brief*), Wilson Sonsini Goodrich & Rosati P.C., Los Angeles, CA; Jessica R. Lonergan, *on the brief*, Wilson Sonsini Goodrich & Rosati P.C., New York, NY; and Eric P. Tuttle, *on the brief*, Wilson Sonsini Goodrich & Rosati P.C., Seattle, WA.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION,** the March 19, 2024, judgment of the District Court is **VACATED**, and the matter is **REMANDED** for further proceedings, with instructions to permit the filing of the proposed Second Amended Complaint.

Plaintiffs Timothy Reif and David Fraenkel, as Co-Trustees of the Leon Fischer Trust for the Life and Work of Fritz Grünbaum, and Milos Vavra, "are co-heirs of the estate of Grünbaum, a Viennese Jewish cabaret performer . . . who was arrested by the Gestapo on March 22, 1938, imprisoned in the Dachau Concentration Camp, despoiled of all of his property by the Nazi regime, and murdered in Dachau on January 14, 1941." App'x at 16. They claim title to *Russian Prisoner of War*, a 1916 painting by Egon Schiele (the "Artwork"), that was possessed by defendant the Art Institute of Chicago

2

("AIC") at the time this action was filed. Plaintiffs assert that the Nazis stole the Artwork – and other property – from Grünbaum while he was held at Dachau. AIC, which acquired the Artwork in 1966, maintains that the Artwork "was not looted by the Nazis," but rather "had been purchased from Grunbaum's sister-in-law," AIC Br. at 1 (quotation marks and citations omitted), and that AIC owns the Artwork free of any claims by plaintiffs. AIC further contends that plaintiffs' claims to the Artwork are barred by collateral estoppel, laches, and the statute of limitations.

Plaintiffs filed this action against AIC for declaratory judgment, conversion, and replevin on December 14, 2022. The District Court dismissed plaintiffs' First Amended Complaint ("FAC") as barred by the applicable statute of limitations and by laches, and denied as futile plaintiffs' motion for leave to file a Second Amended Complaint ("SAC"). *See Reif v. Art Inst. of Chicago*, 703 F. Supp. 3d 427 (S.D.N.Y. 2023), *reconsideration denied*, No. 23CV02443(JGK), 2024 WL 838431 (S.D.N.Y. Feb. 28, 2024). This appeal followed.

The Court reviews *de novo* both the grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, and the denial of leave to amend based on futility. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106-07 (2d Cir. 2023). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "Futility arises when a proposed amended complaint could not withstand a motion to dismiss." *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quotation marks and citation omitted).

3

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.    Statute of Limitations

New York imposes a three-year statute of limitations for recovery of chattel. *See Solomon R. Guggenheim Found. v. Lubell*, 569 N.E.2d 426, 429 (N.Y. 1991). Where the current possessor is a good faith purchaser, the claim accrues "when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." *Id.* By contrast, where the current possessor acquired the object in bad faith or by theft, "the Statute of Limitations runs from the time of the theft." *Id.*

But the Holocaust Expropriated Art Recovery Act (the "HEAR Act"), adopted on December 16, 2016, imposes a six-year statute of limitations on certain claims, preempting state law. *See* Pub. L. No. 114-308, 130 Stat. 1524, §5(a). The HEAR Act was intended "[t]o ensure that claims to artwork and other property stolen or misappropriated by the Nazis are not unfairly barred by statutes of limitations." *Id.* §3(2). Under the HEAR Act, a claim accrues upon the "actual discovery" of both the "identity and location of the artwork" and the claimant's "possessory interest" in the artwork. *Id.* §5(a). The statute also revives certain claims that would otherwise be barred by the applicable statute of limitations: Where a claimant learned of a potential cause of action *before* December 16, 2016, actual discovery is deemed to have occurred on December 16, 2016. *See id.* §5(c). However, if actual discovery occurred on or after January 1, 1999, and the potential claimant could have brought a timely claim but waited more than six years to do so, the HEAR Act does not save the claim. *See id.* §5(e).

4

The District Court dismissed the FAC as time-barred under New York law, concluding that the allegations in the FAC "support the idea that the defendant is a good-faith possessor." 2024 WL 838431, at *3. As a result, the District Court concluded, plaintiffs' claims accrued and the statute of limitations began to run on February 3, 2006, when the defendant refused to return the Artwork, and the HEAR Act did not revive plaintiffs' claims because the exception in §5(e) applied. The District Court further held that the proposed SAC – which alleged that AIC was *not* a possessor in good faith and altered plaintiffs' theory as to the date their cause of action accrued – did not cure the statute of limitations issue, rendering amendment futile.

"Dismissal under Rule 12(b)(6)" based on a statute of limitations is "appropriate only if it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) (quotation marks and citation omitted). "[S]ome doubt" as to the expiration of the limitations period "is all that is necessary to withstand a motion to dismiss under rule 12(b)(6)." *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989). Indeed, the very question of when a plaintiff has sufficient knowledge to constitute "actual discovery" can be a fact-based inquiry, unsuitable for resolution at the 12(b)(6) stage. *Cf. City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011). "The pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Clark v. Hanley*, 89 F.4th 78, 93-94 (2d Cir. 2023) (quotation marks and

5

citation omitted).

We conclude that the statute of limitations defense is not conclusively established on the face of the proposed SAC. The SAC plausibly alleges that the HEAR Act saves plaintiffs' claims, and while further factual development may or may not support that allegation, the question is not beyond doubt, based on the allegations of the SAC itself. As a result, the District Court erred in finding that amendment would have been futile.

## II.  Collateral Estoppel/Issue Preclusion

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quotation marks and citation omitted). A motion to dismiss on the basis of issue preclusion, as on the basis of any affirmative defense, may be granted only if the facts supporting dismissal are apparent on the face of the complaint, documents incorporated into or integral to the complaint, and matters of which the court may take judicial notice, including court records. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

The District Court concluded that plaintiffs' claims were barred by laches because the decision issued in the matter of *Bakalar v. Vavra*, 819 F. Supp. 2d 293 (S.D.N.Y. 2011), had preclusive effect. We conclude that the preclusive effect of *Bakalar* on the laches issue is not apparent based solely on the allegations of the SAC and matters of which we may take judicial notice; as such, it was improper for the District Court to

6

apply issue preclusion on that issue at the motion to dismiss stage.[1]

In *Bakalar*, the plaintiff (Bakalar) filed suit against Milos Vavra and Leon Fischer – the same parties in interest as plaintiffs in this action – seeking a judgment declaring him the lawful owner of a different Egon Schiele drawing once owned by Grünbaum. Vavra and Fischer countersued for conversion and replevin. *See Bakalar*, 819 F. Supp. 2d at 294. Following a bench trial, the court entered judgment in favor of Bakalar, finding, *inter alia*, that laches barred Vavra and Fischer's claims.

"A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). The *Bakalar* Court determined that because "both Vavra's and Fischer's ancestors were aware of their relationship to the Grunbaums and their eventual deaths in concentration camps," their "ancestors were aware of – or should have been aware of – their potential intestate rights to Grunbaum property, and Vavra and Fischer

---

[1] It is particularly important to properly limit the scope of the inquiry at the 12(b) stage where not only the defense of issue preclusion, but the underlying issue – here, laches – is ill-suited to resolution on a motion to dismiss. "The equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case. The inquiry is a factual one." *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994) (citation omitted); *see also Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 135 (2d Cir. 2021) (noting that a motion to dismiss may be granted based on laches only if "a meritorious laches defense is available from the face of [the] complaint"); *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 573 F. Supp. 3d 671, 683 (D. Conn. 2021) ("Dismissal at this stage on the basis of laches is therefore rare, as the defense necessarily involves a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute." (quotation marks and citation omitted)).

are bound by the knowledge of their respective families." *Bakalar*, 819 F. Supp. 2d at 305. It further held that Vavra and Fischer's ancestors had made only limited efforts to recover Grünbaum's property in the intervening years, and that the prejudice to Bakalar from the delay was "clear." *Id.* at 306. The District Court found that this holding had preclusive effect on the laches issue in this case.

While the parties claiming the disputed artworks here and in *Bakalar* are the same, and the artworks come from the same collection, the possessors of the artworks are different in significant ways that, at the motion to dismiss stage, render the application of issue preclusion improper.[2] Most significantly, the *Bakalar* Court rested its finding of prejudice to Bakalar on factors that do not – on the face of the SAC – apply to AIC.

> Defendants argue that because Bakalar did not inquire into the provenance of the Drawing when he purchased it and failed to investigate its provenance for over forty years, any prejudice to Bakalar was due to his own conduct, rather than the Defendants' delay. However, this Court previously found that Bakalar purchased the Drawing in good faith, and there is no reason to disturb that finding. Moreover, Bakalar, as an ordinary non-merchant purchaser of art, had no obligation to investigate the provenance of the Drawing, and this Court will not saddle him with a greater duty than the law requires.

*Bakalar*, 819 F. Supp. 2d at 306.

First, AIC is not "an ordinary non-merchant purchaser," as the *Bakalar* Court found Bakalar to be. *Id.* Rather, AIC is alleged to be "a sophisticated acquirer of art work with superior advance knowledge and warnings of Nazi art looting," which,

---

[2] Moreover, laches is a question of New York substantive law, and the New York Appellate Division, First Department, has held that *Bakalar* may not have preclusive effect "where the purchaser, the pieces, and the time over which the pieces were held differ significantly." *Reif v Nagy*, 52 N.Y.S.3d 100, 102 (1st Dep't 2017).

"[u]nlike Bakalar, . . . had the knowledge, sophistication and advance opportunity to inquire into the Artwork's provenance." App'x at 2210.

Second, AIC is expressly alleged to *not* have obtained the Artwork "in good faith," while the *Bakalar* Court found that Bakalar *had* acquired his piece in good faith. *Id.* at 1965, 1994, 2061. Rather, the SAC alleges that "the Art Institute was on inquiry notice prior to acquiring the Artwork that it might be stolen and failed to exercise appropriate diligence in acquiring the Artwork or to make reasonable efforts to ascertain the true owners of the Artwork prior to taking possession," and that "the Art Institute acted in bad faith and tortiously acquired the Artwork in 1966." *Id.* at 2206, 2221.

These differences between AIC and Bakalar bear directly on the prejudice each defendant faced as a result of the delay in pursuing relief, an issue which "is ordinarily fact-intensive" and must be "apparent" from the pleadings to be determined "as a matter of law." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 194-95 (2d Cir. 2019) (quotation marks and citation omitted). In turn, this difference in the analysis of prejudice to AIC and Bakalar means that the laches issue adjudicated in *Bakalar* is not sufficiently "identical" to the one in the instant case to have preclusive effect. *Phoenix Light*, 66 F.4th at 371.[3]

---

[3] Factual differences with *Bakalar* would also foreclose AIC's alternative argument that *Bakalar* precludes plaintiffs from invoking the HEAR Act. AIC contends that *Bakalar*'s conclusion that Grünbaum's collection was "not looted by the Nazis," 819 F. Supp. 2d at 299, means that the Artwork was not "lost . . . because of Nazi persecution" within the meaning of the HEAR Act. Pub. L. No. 114-308, 130 Stat. 1524, §5(a). But this issue was addressed in *Bakalar* only in the context of assessing ownership, and not in the context of the HEAR Act. The SAC in this matter alleges that even if the Artwork was not "looted," and it was instead purchased from Grünbaum's sister-in-law Lukacs, *she* obtained it only as the result of "the unlawful power of attorney the Nazi regime caused

9

In sum, we conclude that the allegations of the SAC do not, read together with matters of which we may take judicial notice, establish on their face that the *Bakalar* decision has preclusive effect on this matter as to the question of laches. It may be that the evidence adduced in discovery will reveal no genuine disputes of fact differentiating *Bakalar* from this matter, and issue preclusion will apply. But at the motion to dismiss stage, we do not find the defense of issue preclusion to be apparent on the face of the Second Amended Complaint.

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the March 19, 2024, judgment of the District Court is **VACATED**, and the matter is **REMANDED** for further proceedings, with instructions to permit the filing of the proposed Second Amended Complaint.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

Grünbaum to execute" while he was imprisoned at Dachau. App'x at 2193. Accepting that as true – as we must at this point – that could bring this matter within the HEAR Act's broad definition of "Nazi persecution" as "any persecution of a specific group of individuals based on Nazi ideology by the Government of Germany, its allies or agents, members of the Nazi Party, or their agents or associates." Pub. L. No. 114-308, 130 Stat. 1524, §4(5). The HEAR Act had not been adopted when *Bakalar* was decided, and that court thus did not determine the effect, if any, of this argument on its application.